**UNITED STATES of America, Plaintiff**

**v.**

**WATER QUALITY INSURANCE SYNDICATE, Defendant**

**No. CIV.03–181–P–H.**

United States District Court, D. Maine.

May 10, 2004.

David R. Collins, Assistant United States Attorney, Portland, ME, John H. De Yampert, Jr., U.S. Department Of Justice, Torts Branch, Civil Division, Washington, DC, for United States of America, Plaintiff.

Brendan E. Zahner, John M. Woods, Thacher, Proffitt & Wood LLP, New York, NY, Michael Kaplan, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Water Quality Insurance Syndicate, Defendant.

Maine Special Education Regulations. *See* Me. Dep't of Educ., 05–071 CMR 101–12.12.

### CERTIFICATE OF QUESTION OF STATE LAW TO THE SUPREME JUDICIAL COURT OF MAINE SITTING AS THE LAW COURT

HORNBY, District Judge.

The United States District Court for the District of Maine finds that there are involved in the above-captioned case questions of law of the state of Maine which may be determinative of the cause and that there are no clear controlling precedents thereon in the decisions of the Supreme Judicial Court of Maine sitting as the Law Court. Accordingly, this court hereby certifies these questions to the Supreme Judicial Court of Maine sitting as the Law Court and respectfully requests the Law Court to provide instructions concerning such questions of state law pursuant to 4 M.R.S.A. § 57, as amended, and Rule 76B of the Maine Rules of Civil Procedure.

In this action the plaintiff asserts a claim under 24-A M.R.S.A. § 2904, seeking to reach and apply the proceeds of a policy of insurance issued by the defendant to Gulf of Maine Trawlers, Inc. The following facts emerge from the stipulated record submitted to the court in connection with the parties' motions for judgment on the stipulated record.

#### STATEMENT OF FACTS

Gulf of Maine Trawlers, Inc. ("GMT"), a Delaware corporation registered in Maine as a foreign business corporation owned and operated a diesel-powered trawler named the Jessica Ann, The sole officer and shareholder of GMT is Captain Zenon Gogola. On February 19 and 20, 2000, the Jessica Ann was manned by Gogola, Ken Davis, and three other individuals. The crew planned to depart Portland, Maine on February 20, 2000, and head to Wilkinson Basin to fish.

Beginning sometime on the afternoon of February 19, 2000, and continuing until sometime around midnight that night, Gogola and the entire crew gathered at a tavern in Portland to eat and drink beer. At approximately midnight, Gogola and the crew left the tavern and went to the Jessica Ann. After boarding the Jessica Ann, Davis went to bed and slept. Gogola drank an additional three or four beers and worked on the nets. At approximately 2:00 a.m. on February 20, 2000, Gogola had Davis roused and told Davis to get the Jessica Ann underway and to proceed to the fishing grounds. Gogola then went to his bunk to sleep.

At the time he received Gogola's order, Davis's blood alcohol level was approximately 0.22. Gogola's blood alcohol level at that time was approximately 0.21. Gogola was aware that Davis's blood alcohol level at the time far exceeded that allowed under the circumstances by 33 C.F.R. § 95.020. At the time, the Jessica Ann was loaded with between 8,000 and 12,000 gallons of fuel oil.

Davis operated the Jessica Ann without supervision, bringing her out of Portland Harbor. The weather was fine, with good visibility and no wind. After the vessel cleared Portland Head Light, Davis put it on autopilot. He did not manually take fixes or mark the vessel's position on charts. At approximately 4:00 a.m. on February 20, 2000, while proceeding at approximately eight knots, Davis head a loud sound as the vessel struck something in the water, which David believed was Alden Rock. Gogola heard the noise and went to the pilot house. Shortly thereafter, a bilge alarm sounded and Gogola discovered a cracked weld in a seam in the engine room. Gogola started all of the bilge pumps, which were unable to keep up with the resulting flooding. At approxi-

mately 4:30 a.m. Gogola gave the order to abandon ship.

The crew was rescued by the Coast Guard from a life raft near Alden Rock. The Jessica Ann sank in approximately 130 feet of water about one nautical mile southwest of Alden Rock.

Breath tests were performed on the crew after they were rescued and examined by emergency medical personnel. Gogola was tested at 7:11 a.m. and registered 0.11 blood alcohol content. Davis was tested at 7:35 a.m. and registered 0.12 blood alcohol content. Only one member of the crew did not show a level of blood alcohol.

On October 17, 2000, Gogola pleaded guilty to and was convicted of one count of operating a commercial fishing vessel in a grossly negligent manner, in violation of 46 U.S.C. § 2302(b) and 33 C.F.R. §§ 95.015(b) & 95.050(a). On October 24, 2000, Davis pleaded guilty to and was convicted of one count of operating a commercial fishing vessel under the influence of alcohol, in violation of 46 U.S.C. § 2302(c) and 33 C.F.R. §§ 95.015(b) & 95.050(b).

The Coast Guard initiated a removal action pursuant to 33 U.S.C. § 1321(c) on February 26, 2000. Removal costs associated with the action were paid from the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. §§ 1321(s) & 2712(a)(1)(A) in the amount of $930,510.09. On January 13, 2003, GMT paid the United States $80,906.21, leaving an unpaid balance of $849,603.88. The United States filed suit against GMT on January 27, 2003 to recover the remaining balance. On March 27, 2003, the United States informed Water Quality Insurance Syndicate ("WQIS") that the suit had been filed, that GMT did not intend to defend the suit, and that an answer was due on or before April 8, 2003. WQIS did not appear in that action. On May 22, 2003, this court entered judgment against GMT for $849,603.88 plus interest and costs.

On August 6, 1999, GMT purchased a one-year marine oil pollution insurance policy covering the Jessica Ann against liability arising under the Oil Pollution Act. WQIS underwrote the policy. On June 30, 2000, WQIS informed GMT that coverage was excluded under the policy for the events of February 20, 2000, because the sinking arose from the willful misconduct of Gogola.

## DISCUSSION

The United States brings the current action under 24-A M.R.S.A. § 2904, Maine's reach and apply statute. Among other defenses, WQIS asserts that section 2904 does not apply to the policy of insurance at issue here, because that policy is one of marine and transportation insurance, as defined in 24-A M.R.S.A. § 208, rather than one of casualty insurance, as defined in 24-A M.R.S.A. § 207, and that section 2904 is part of Chapter 39 of Title 24-A of the Maine Revised Statutes, which by its terms applies only to casualty insurance. The government contends that section 2904 is not so limited in scope and also points to 24-A M.R.S.A. § 701, contending that the policy at issue in this case may also be considered one of casualty insurance. The contention of WQIS, if correct, would be dispositive of the entire action.

In order for this court to adjudicate the motions for judgment on a stipulated record now pending before it, the following questions of Maine law must be answered:

1. Does 24-A M.R.S.A. § 2904 apply to policies of insurance other than those defined in 24-A M.R.S.A. § 707 as policies of casualty insurance?

2. May an insurance policy appropriately characterized as one of marine insurance as defined in 24-A M.R.S.A. § 708

also be characterized as one of casualty insurance pursuant to 24–A M.R.S.A. §§ 701 & 707 for the purpose of application of 24–A M.R.S.A. § 2904?

In accordance with Maine Rule of Civil Procedure 76B(b), the court respectfully suggests to the Supreme Judicial Court of Maine sitting as the Law Court that the plaintiff be treated as the appellant before that Court.